ESTATE OF JESSE L. GRIMES, DECEASED, DAVID GRIMES, EXECUTOR, Petitioner, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Estate of Grimes v. Commissioner
Docket No. 26200-84.
United States Tax Court
T.C. Memo 1987-379; 1987 Tax Ct. Memo LEXIS 566; 54 T.C.M. (CCH) 1; T.C.M. (RIA) 87379; August 3, 1987. *566 Decedent and his deceased wife executed a joint and mutual will leaving certain property to the survivor of them, with the remainder to named beneficiaries. Held: Decedent did not make a present gift of the savings accounts in which he had an interest at the time of his spouse's death. Held further: Decedent took a life estate in all other subject property and lost dominion and control over the property so as to complete a present gift of the remainder interest for Federal gift tax purposes at that time. Merrick C. Hayes, for the petitioner. Michael W. Bitner, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: This case was assigned to Special Trial Judge Hu S. Vandervort pursuant to section 7456 [1] (redesignated as section 7443A(b) by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) of the Act and Rules 180 and 181. The Court agrees with and adopts his opinion which is set forth below. OPINION OF THE SPECIAL TRIAL *567 JUDGE VANDERVORT, Special Trial Judge, This case is before the Court on respondent's Motion for Summary Judgment, and petitioner's Cross-Motion for Summary Judgment. Rule 121. In the notice of deficiency issued to Jesse L. Grimes (hereinafter referred to as "decedent"), who died on November 2, 1985, respondent determined a gift tax liability of $ 164,308.43 for taxable year 1979. The deficiency is attributed to respondent's determination that, pursuant to Illinois law, decedent became contractually bound by the provisions of a joint and mutual will to transfer to his son and three granddaughters, all of decedent's interest in certain personal property and a remainder interest in real property, in which decedent held an interest at the time of the death of his spouse. [2]
*568 On January 2, 1975, decedent and his wife, (Ressie), executed the "Joint and Mutual Last Will and Testament of Jesse L. Grimes and Ressie F. Grimes" (the will). Shortly thereafter, on March 20, 1975, the couple executed the "First Codicil to Joint and Mutual Last Will and Testament of Jesse L. Grimes and Ressie F. Grimes" (the Codicil). On April 17, 1979, Ressie died testate and a domiciliary of the State of Illinois. The Will and Codicil were admitted to probate in the Circuit Court of Piatt County, Illinois, with decedent appointed executor on May 30, 1979. The couple's holdings at that time consisted of various parcels of real estate and numerous savings accounts held either individually, as tenants-in-common or as joint tenants. The will contains a prefatory statement which recites that decedent and Ressie: * * * do each jointly and mutually, in consideration of the other's making his will, of the provisions made herein in each other's behalf, and the sum of ONE DOLLAR ($ 1.00) in hand paid, by each of us to the other, receipt whereof is hereby acknowledged, make this our Joint and Mutual Last Will and Testament, and agree that the same shall not be changed or revoked by either *569 of us without the written consent of the other and agree that any joint tenancy property owned by us at the date of the death of the first one of us dying shall not be capable of being disposed of by the survivor but shall pass only as hereinafter provided * * *. Clause Second of the will states: We give and bequeath to each other respectively, all personal estate of every kind and character, including notes and accounts and choses in action, and including household goods which either of us may own at the time of the one first dying, excepting our Savings & Loan accounts, our life insurance proceeds and our bonds which we each will, devise and bequeath to our son, Charles E. Grimes. Clause Third of the will contains the instructions regarding the disposition of the couple's real estate. We hereby give, devise and bequeath to each other respectively, for and during the term of the natural life of the survivor of us, all our respective interests in the real estate hereinafter described in this THIRD clause of our Joint and Mutual Will and which real estate for convenience and brevity is referred to in this Will after the particular description thereof, by tracts numbered from one to *570 nine inclusive * * *. This devise is on condition that the survivor * * * is further required to keep the buildings on said premises insured for their fair insurable value. Provided that in case any of said buildings should become damaged or destroyed by fire or other inevitable accident, that any money collectible by such survivor under any policies of insurance on said building or buildings shall be used by such survivor in rebuilding said destroyed or damaged buildings or otherwise expended in the improvement of said real estate. Clauses Fourth and Fifth are specific bequests of the real property mentioned in Clause Third. FOURTH: Subject to the life estate herein by the THIRD clause of this our Joint and Mutual Will given to the survivor of us, we hereby give and devisee [sic] Tracts #1, #2, #3, #4, #5, #6, and #7 to our beloved son, CHARLES E. GRIMES, in fee simple. FIFTH: Subject to the life estate herein by the THIRD clause of this our Joint and Mutual Will given to the survivor, we hereby give, devise and bequeath Tracts #8 and #9 to be divided equally between the three daughters of our deceased daughter, Lucile Hawthorne, namely: JEAN SWANSON, KAREN HAWTHORNE AND JANE HAWTHORNE. *571 The balance of the will outlines the direction of any rest, residue and remainder, sets forth a plan for disposition upon the untimely death of all the beneficiaries under the Will and contains instructions regarding the appointment of an executor. The Codicil provides for a change in a specific bequest of a tract of real property and is not pertinent to the resolution of the issues presented in this motion. Respondent argues that the provisions of the will effected a present gift, by descendent to his son, of all decedent's interest in savings accounts held by him at his wife's death. Additionally, respondent argues that, at Ressie's death, decedent had only a life estate in the real property specified in the will, thereby creating a present gift of the remainder interest in the real property to decedent's son and granddaughters. In support of this position respondent maintains that, at the time of Ressie's death, decedent relinquished all dominion and control over the savings accounts and real property. Thus, the obligation to transfer the property constituted a transfer subject to Federal gift tax under the provisions of section 2501 et seq. In its cross-motion, petition maintains *572 that decedent did not give up dominion and control over the savings accounts or the real property specified in the will. Petitioner further argues that decedent had the power to consume the subject property, thereby making the valuation of a present gift of a remainder interest impossible, resulting in no present transfer subject to Federal gift tax. Rule 121(b) states that a decision shall be rendered on summary judgment "if the pleadings * * * and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." The party moving for summary judgment has the burden of demonstrating that no genuine issue as to any material fact exists. Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Jackslin v. Commissioner,79 T.C. 340, 344 (1982). Upon careful consideration of the record before us, we find that the facts of this case are not in dispute, and that as a matter of law decedent did not make a present gift of the savings accounts in which he had an interest at the time of the death of his spouse. We do find, however, that as a matter of law decedent did make a present *573 gift of the remainder interest in all other property in which he was given a life estate under the couple's joint and mutual will. Respondent's Motion for Summary Judgment will be granted in part and petitioner's Cross-Motion for Summary Judgment will be denied in part. Section 2501 imposes a tax "on the transfer of property by gift during such calendar year." Section 2511 states that "section 2501 shall apply whether the transfer is in trust or otherwise, whether the gift is direct or indirect, and whether the property is real or personal, tangible or intangible * * *." The legislative history accompanying the enactment of the predecessor to section 2501 states that "The terms 'property,' 'transfer,' 'gift,' and 'indirectly' are used in the broadest and most comprehensive sense; the term 'property' reaching every species of right or interest protected by law and having an exchangeable value." Furthermore, the phrases "'transfer * * * by gift' and 'whether * * * direct or indirect' are designed to cover and comprehend all transactions * * * regardless of the means or the device employed in its accomplishment." S. Rept. 665, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 524; H. *574 Rept. 708, 72d Cong., 1st Sess. (1932), 1939-1 C.B. (Part 2) 475. The regulations under section 2511 state that "As to any property or part thereof or interest therein, of which the donor has so parted with dominion and control as to leave him no power the gift is complete." Section 25.2511-2(b), Gift Tax Regs. (emphasis supplied). Accordingly, we turn our focus to the rights of decedent in the savings accounts and real property. In determining whether decedent gave up control over the property we look to Illinois state law. The nature and extent of an interest or right in property is controlled by state law. Aquilino v. United States,363 U.S. 509, 512-513 (1960); Estate of Fulmer v. Commissioner,83 T.C. 302, 304 (1984). Under Illinois law a joint and mutual will is a single testamentary instrument which contains the wills of two or more persons. It is executed jointly and can dispose of property owned in every fashion by the testators. Rauch v. Rauch,112 Ill.App. 3d 198, 445 N.E.2d 77, 79 (1983). Underlying the will is a contract, express or implied, between the parties requiring the survivor to dispose of the property according to the provisions in the will. Peck v. Drennan,411 Ill. 31, 103 N.E. 2d 63 (1951). *575 When there is a joint and mutual will between husband and wife, their mutual promises are sufficient consideration to support an agreement of disposition. Bonczkowski v. Kucharski,13 Ill. 2d 443, 150 N.E.2d 144 (1958). As in the present case, the contract itself may be contained in the joint will. Bonczkowski v. Kucharski, supra;Jusko v. Grigas,26 Ill. 2d 92, 186 N.E.2d 34 (1962); Helms v. Darmstatter,56 Ill.App. 2d 176, 205 N.E.2d 478 (1965), affd. 34 Ill. 2d 295, 215 N.E.2d 245 (1966). Agreements to make joint and mutual wills are, in general, valid under Illinois law. Helms v. Darmstatter, supra.Illinois courts have set forth five factors in determining the existence of a joint and mutual will; second, whether the parties have made reciprocal provisions disposing of their estates in favor of each other; third, whether the parties have pooled all property, regardless of how title is held, into a joint fund; fourth, a common dispositive scheme for the joint fund; and, fifth, the use of common plural terms such as "we" and "our." The will in the present case is entitled "Joint and Mutual Last Will and Testament of Jesse L. Grimes and Ressie F. Grimes." (emphasis supplied). *576 Upon the death of one of them, all property flows to the survivor with the exception of several savings accounts. All of the couple's real estate was pooled into a common fund outlined in Clause Third of the will whether it is owned singly or jointly. This common fund is to be dispersed to the couple's only living child with two parcels earmarked for their grandchildren. Last, the will is rife with the terms "we" "us" and "our." Thus, the presence of all five characteristics outlined by the Illinois courts leaves us with little doubt that the will in this case is a joint and mutual will under Illinois law. Having found a joint and mutual will, we turn to respondent's first contention that under Clause Second of the will, decedent was required to transfer his interest in all savings accounts, to his son, at the time of the death of his spouse. The resolution of this issue does not rest on the fact that this is a joint and mutual will, but on the fact that the provisions of the will must be given their plain and unambiguous meanings. Peck v. Drennan,411 Ill. 31, 103 N.E.2d 63 (1951). In examining Clause Second of the will, it is clear that the savings accounts in which Ressie *577 had an interest at her death were disposed of in two ways. Those accounts which she held in joint tenancy with decedent passed outside of the will to decedent at the instant of Ressie's death. Bonczkowski v. Kucharski,13 Ill. 2d 443, 451, 150 N.E.2d 144, 149 (1958). Her remaining interest in any savings accounts passed to her son under the direction of Clause Second of the will. However, decedent's interest in the savings accounts, whether held prior to his spouse's death or received on account of Ressie's death, did not pass concurrently to decedent's son, nor does Clause Second require such a result. The provision plainly provides that upon the death of either spouse, the decedent spouse shall pass his or her interest in any savings accounts to the son. The use of the words "will, devise and bequeath" are inconsistent with a gift by the surviving spouse at the time of the death of the spouse first to die. These words indicate an agreement that the interest of the spouse first to die was to go to his son but the interest of the surviving spouse would pass by his will. Therefore, we reject respondent's argument that Clause Second required decedent to make a present gift of his *578 interest in the savings accounts to his son upon the death of his spouse. [3] Respondent argues, in the alternative, that if there is no present gift of the savings accounts by decedent, there is a present gift of a remainder interest in the savings accounts. In addition, respondent argues that there is also a present gift, by decedent, of the remainder interest in the real property specified in the Clause Third of the will. Petitioner contends that decedent is not subject to gift tax because he had the power to change the disposition of the property for his own benefit by using or consuming the property or proceeds therefrom. Once again, we must turn to Illinois law to determine what rights decedent had in property passing under a joint and *579 mutual will. Joint and mutual wills create a life estate in the surviving spouse of all property passing under the will and agreement. First United Presbyterian Church v. Christenson,64 Ill. 2d 491, 356 N.E.2d 532 (1976). [4] *580 "In the absence of an express grant of such authority in the [joint and mutual] will under which the life estate was created, a life tenant is without power to convey the property by sale, inter vivos gift or appointment." [5] (emphasis in original). First United Presbyterian Church v. Christenson,356 N.E.2d at 536; see also Grubmeyer v. Mueller,358 Ill. 529, 53 N.E.2d 438 (1944). Illinois differs in this respect from the majority of jurisdictions, [6] *581 with the result that, unless a power to convey the property compromising the principal of the life estate is expressly granted in the will or agreement, the Illinois life tenant has no power to dispose of the assets in which he has been given a life estate. Thomas v. First National Bank of Chicago,134 Ill.App. 3d 192, 479 N.E.2d 1014, 1025 (1985). See also Illinois Masonic Children's Home v. Flynn,109 Ill.App. 3d 744, 747, 441 N.E.2d 126, 128 (1982). Therefore, without express language to the contrary, the life tenant is severely constrained in the use of the property passing under a joint and mutual will. [7] *582 In the current case, the will grants no authority or discretion to the survivor to convey, consume or otherwise dispose of the subject property. Furthermore, Clause Third of the will, which expressly creates a life estate in the survivor, also requires that the survivor conserve the property for the beneficiaries by keeping the premises properly insured and by rebuilding, repairing or improving any destroyed or damaged buildings. In addition to the limitations placed on the life estate holder, Illinois recognizes certain defined rights in the remaindermen designated in a joint and mutual will. These rights have their origin in the fact that Illinois courts agree that the contractual obligation created by a joint and mutual will made pursuant to an agreement is enforceable. Jusko v. Grigas, supra. Moreover, such wills become irrevocable upon the death of the first spouse to die. Cf. Moline National Bank v. Flemming,91 Ill.App. 3d 398, 414 N.E.2d 936 (1980). *583 The remaindermen under a joint and mutual will, although not able to get immediate possession of property bequeathed in the will, are "entitled to a specific enforcement of that contract in a court of equity. This right arises upon the death of the first testator under a joint and mutual will." Tontz v. Heath,20 Ill. 2d 286, 170 N.E.2d 153, 158 (1960). Such right is pursuant to the contract and places the remaindermen under the will in the position of third-party beneficiaries whose interests are vested at the time of the first spouse to die. Tontz v. Heath, supra;Rauch, 445 N.E. 2d at 81. In light of the restrictions placed upon decedent and the rights granted to the remaindermen under the will by Illinois jurisprudence, we find that decedent parted with dominion and control so as to complete a present gift of a remainder interest in the savings accounts and real property at the time of Ressie's death. By entering into the contract underlying the will, decedent contracted away his ability to convey, gift or consume the property. To decide otherwise, would be to ignore the intent and purpose of the instant and mutual will. At the death of decedent's spouse, the scheme for disposition *584 of the couple's property crystallized; we will not at this time change the contract or the provisions of the will simply for tax purposes. In the recent case of Pyle v. United States,766 F.2d 1141 (7th Cir. 1985), [8] *585 the Court of Appeals found a present gift of a remainder interest in property passing under a joint and mutual will. That court found that, although the surviving spouse did possess power to dispose of the property, that power was sufficiently defined and restricted so as to limit her interest in the property and create a completed gift of the remainder interest to the beneficiaries. [9] Therefore, valuation of the life estate and the remainder interest can be made for gift tax purposes. See section 25.2512-5(a)(1), Gift Tax Regs. As in the current case, the Pyle taxpayer was limited in her ability to dispose of the property she received pursuant to the joint and mutual will. The terms of the agreement limited both her control over her own property, and that which had passed from her husband. Similarly, decedent agreed to dispose of his own property and the property he received from his wife in a specific pre-arranged dispositive scheme. The fact that he could no longer direct the disposition of the property for his own benefit or for the benefit of another causes the gift of the remainder *586 interest to be complete. In an earlier case in this Court, we recognized the potential gift taxability arising from the use of the joint and mutual will. In Hambleton v. Commissioner,60 T.C. 558, 567 (1973), we stated that when, as a result of a "contractual promise, the survivor is held to have irrevocably parted with a remainder interest in his or her share [of the property] at the death of the testator first to die, retaining only a life state therein * * * it appears to be settled that the surviving spouse makes a taxable gift of the remainder interest * * *." It is without question in the current case that at the death of the first to die, all of the couple's property came under the provisions of the Will and agreement. Neither party reserved any right to control the disposition of the property, but agreed that it would pass as provided in the will. As a result, the survivor gave up dominion and control over all property passing under the Will. Therefore, decedent's gift of the remainder interest, in the property in which he had a life estate pursuant to the Will, was complete for gift tax purposes. An appropriate order will be issued.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. All rule references are to the Tax Court Rules of Practice and Procedure unless otherwise noted. ↩
2. The property at issue consists of eleven separate savings accounts and eight parcels of real estate as follows: Interest of
Balance at
Account
Petitioner
April 17, 1979
Acct. #30,650-26
Tenant in common
Bloomington Federal
with Ressie F.
Savings and Loan
Grimes
$  5,769.97
Acct. # 35,064-26
Tenant in common
Bloomington Federal
with Ressie F.
Savings and Loan
Grimes
$ 19,107.28
Acct. #07 008833 0,
Citizens Savings and
Owned individually
Loan Association
by decedent
$  8,036.16
Acct. # DDD4-431,
Leroy Savings and
Owned individually
Loan Association
by decedent
$ 18,227.50
Acct. # DDD4-432,
Tenant in common
Leroy Savings and
with Ressie F.
Loan Association
Grimes
$ 18,227,50
Acct. # DDD4-437,
Joint tenant
Leroy Savings and
with Ressie F.
Loan Association
Grimes
$  4,523.44
Acct. # DDD4-438
Joint tenant
Leroy Savings and
with Ressie F.
Loan Association
Grimes
$  4,523.44
Acct. # DDD4-325,
Joint tenant
Leroy Savings and
with Ressie F.
Loan Association
Grimes
$  5,828.88
Acct. # DDD4-326,
Joint tenant
Leroy Savings and
with Ressie F.
Loan Association
Grimes
$  5,828.88
Acct. # DDD4-329,
Joint tenant
Leroy Savings and
with Ressie F.
Loan Association
Grimes
$  5,788.02
Acct. #DDD4-330,
Joint tenant
Leroy Savings and
with Ressie F.
Loan Association
Grimes
$  5,788.02
↩
Tract
Number
Interest of Decedent
1
Tenant in common with Ressie F. Grimes
2
Joint tenant with Ressie F. Grimes
3
No interest: property disposed of
prior to April 17, 1979
4
Tenant in common with Ressie F. Grimes
5
Tenant in common with Ressie F. Grimes
6
Tenant in common with Ressie F. Grimes
7
No interest: owned by Ressie F. Grimes
in fee simple
8
No interest: owned by Ressie F. Grimes
in fee simple
9
Owned by decedent in fee simple
3. Not only does this interpretation strain the plain meaning of the language in the Will, it dictates a ludicrous result. Decedent would have, in effect, given away all of his savings, at the time of his wife's death, leaving neither interest nor principal at his disposal for the remainder of his years. "Tortured constructions will not negate the intention expressed on the face of the Will." Peck v. Drennan,411 Ill. 31, 103 N.E.2d 63↩ (1951). 4. Clauses Fourth and Fifth of the will make it quite clear that the couple's intention was to provide the survivor with only a life estate interest in the real property remaining at the death of the first to die. Clause Third: We hereby give, devise and bequeath to each other respectively, for and during the term of the natural life of the survivor of us all our respective interests in the real estate. * * * [Emphasis supplied.]
In addition, Clauses Fourth and Fifth both start with the language "subject to the life estate↩ herein," and proceed to bequeath the real property in fee simple after the death of the survivor.
5. Although the court in First United Presbyterian Church v. Christenson,64 Ill. 2d 491, 356 N.E.2d 532 (1976), was dealing only with real property, we recognize, as do Illinois courts, that "we can find no logical reason why there should be one rule of law for realty and a converse one for personalty." Moline National Bank v. Flemming,91 Ill.App. 3d 398, 414 N.E.2d 936↩ (1980). Therefore, we apply the principles of the power of a life estate holder to both personalty and realty. 6. Petitioner relies heavily on the general statement of the power of a life tenant found in 97 C.J.S., Wills, section 1367(2), at 309 (1957), for support of its position that decedent had absolute dominion and control over the contested assets. However, the principles enunciated there are not derived from Illinois jurisprudence. Illinois does recognize a life estate with a power to convey only if that power is express. Petitioner also relies on Moline National Bank v. Flemming,91 Ill.App. 3d 398, 414 N.E.2d 936 (1980), where a portion of 97 C.J.S., Wills, section 1367(2) was cited favorably, and which dealt with a life tenant who was given the express power to convey. The court in Moline National Bank↩ accepted some general principles to describe the parameters of a life estate with a power to convey. Those principles were found in 97 C.J.S., Wills, section 1367(2) and were used to illustrate the powers held by a life tenant who was given express powers over the property. In conclusion, we find petitioner's reliance misplaced because decedent was not given a life estate with an express power to convey. 7. In addition, Illinois law imposes several duties upon the life tenant. These duties are to "prevent waste, not to manipulate the title so as to defeat the remaindermen, and not to transfer the property for an inadequate consideration." Gaston v. Hamilton,108 Ill. App. 3d 1145, 1149-1150, 440 N.E. 2d 190, 194↩ (1982) (citations omitted). 8. Petitioner relies on Lidbury v. Commissioner,84 T.C. 146 (1985), affd. on this issue on another ground 800 F.2d 649 (7th Cir. 1986), to bolster its case. However, Lidbury is distinguishable from the current situation. In Lidbury, the court of appeals, after finding that the document in question was a joint and mutual will, concluded that the terms of the will did not sufficiently restrict the taxpayer's power to dispose of the property so as to constitute a gift. Here, unlike the situation in Lidbury, decedent's power was sufficiently restricted. We find Pyle v. United States,766 F.2d 1141↩ (7th Cir. 1985), to be closer to the facts of the instant case. 9. The surviving spouse in Pyle↩ possessed the power to invade corpus only to meet her requirements for "health, support, comfort and maintenance." The court of appeals found that restriction to be an ascertainable standard under Illinois law, and thus, the beneficiaries' interests were sufficiently certain to constitute a completed gift from the widow to the remaindermen at the time of the husband's death.